George W. Reeves and Everman Reeves, copartners, trading as George W. Reeves & Son, v. Louis J. McCloskey and Frank K. McCloskey, copartners, trading as L. J. McCloskey & Company, Appellants.

*Contract—Sale—Warranty—Evidence—Question for jury.*

In an action to recover the contract price of turpentine sold and delivered, the case is for the jury where it appears that the turpentine was not manufactured by the plaintiffs; that it was adulterated, and the evidence is conflicting as to whether the plaintiffs guaranteed its purity.

Where the court affirms appellants' requests for instructions, it is not necessary to refer to the testimony relating thereto.

Argued Jan. 5, 1898. Appeal, No. 144, Jan. T., 1897, by defendants, from judgment of C. P. No. 4, Phila. County, March T., 1893, No. 383, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before ARNOLD, J.

The facts appear by the charge of the court which was in part as follows:

This action has been brought for a balance due on a bill for the sale of spirits of turpentine, the balance claimed being about $1,000. The sale and delivery of the turpentine, and the amount claimed, are conceded to be correct. [The defense to the payment, however, is, that the turpentine was purchased under a guarantee made by the plaintiffs to the buyers, the defendants, that it was pure. It is stated that it was bought by the defendants for the purpose of being used in the manufacture of varnish, and that when they did so use it in the manufacture of varnish they found that it was not pure turpentine, but that it was adulterated] [2] with petroleum or coal oil to such an extent as to vitiate the varnish which the defendants were making with the turpentine and other ingredients. The defendants allege that they had the turpentine tested and analyzed by a chemist, and ascertained that it had in it petroleum or coal oil, to quite a large extent, and they have introduced testimony to show that the effect of such a substance as coal oil in turpentine, when used in the manufacture of varnish, was deleterious and injurious, and destructive of the varnish. The defendants claim that a large quantity of the varnish which they made with this turpentine was impaired in quality and made less in value than it would have been had the turpentine been good, and they say that they lost altogether on varnish manufactured with that turpentine, about $4,000, which you will perceive, is more than the amount claimed by the plaintiffs.

[To that claim of the defendants the plaintiffs object, first, that they did not guarantee absolutely pure turpentine; that they took the order for, and sold, what they called spirits of turpentine as it is commercially known, or known among the

trade, without any guarantee or warranty of quality; that it was such as they were in the habit of selling to manufacturers of varnish generally, and that it was such turpentine as is known to the trade as spirits of turpentine.] [2]

[They have also offered testimony to show that when the bill for this turpentine became due, a son of Mr. Reeves, and one of the plaintiffs, went to the defendants' to collect it, when complaint was made as to the quality of the turpentine and that the defendants then offered to settle the whole account for a discount of twenty per cent, but that the plaintiffs refused to submit to such a discount, and said that they would take back any turpentine which was not satisfactory, and furnish other turpentine which was satisfactory, young Mr. Reeves saying that at that time he was informed that the defendants had thirty-nine barrels of their turpentine still on hand, but that the defendants refused to give up the turpentine and kept it.

Now, if that be true, you will readily come to the conclusion that the defendants ought not to be heard in making any complaint after that date, at least as to the thirty-nine barrels, because if they had an opportunity of having that turpentine which would be satisfactory, and did not embrace the opportunity, they took the consequences of it. This testimony is introduced for the purpose of testing the bona fides or good faith of the defendants in making this defense, because it will be for you to determine, upon the testimony, whether parties who had turpentine which they claim was guaranteed to be pure, and which was not pure, and who offered to pay for it at a discount, and refused to exchange it for other turpentine which would be satisfactory, ought to be heard in making a defense when claim is made against them. It is, however, a question for you to determine. I express no opinion whatever upon it, but simply outline to you the main features of the case:] [1] first, the claim for the turpentine, admitted to be just, so far as the amount is concerned; next, the defense that the turpentine furnished was of such impure quality as to be absolutely worthless to these defendants and injurious to their property, causing them a money loss of about $4,000, the reply on the part of the plaintiffs that they did not guarantee to sell absolutely pure turpentine, but such turpentine as was sold generally to parties engaged in the manufacture of varnish;

also, that when they made demand for the payment of their bill, they were tendered the money, provided they submitted to a discount of twenty per cent, that they refused to stand that discount, and that they then offered to take back the turpentine and furnish other and satisfactory turpentine in place of it.

That is the whole case, as presented on both sides.   It is for you to determine, upon the evidence introduced by the parties, whether the plaintiffs are entitled to recover the amount, for which they sue, either in whole or in part, or not at all.

[It has been also argued to you that as all varnish is composed of several ingredients it might very well have been that some of the other ingredients put into this varnish were not good, and might have affected the result.   It has also been argued to you by counsel, and you have right to give effect to that argument, or not, as you see fit, that the defendants were not as skilful manufacturers of varnish as they ought to have been, and that therefore some of the alleged defects in the manufacture of this varnish were due to their want of skill, as well as the assigned defect on their part of bad turpentine.] [5]

This, however, is a case which is peculiarly one for a jury to determine, and as I have said before, it has been so fully detailed to you by the witnesses and argued by counsel, that I shall leave it to you to determine upon the evidence without any intimation whatever from me.   It is a pure question of fact for you to say, upon the whole testimony in the case, whether you think the plaintiffs are entitled to the amount which they claim, either in whole or in part, or whether their claim is entirely wiped out by the damage which the defendants say was done to the varnish which they made from this turpentine.

My attention has been called by counsel for the defendants to the fact they claim, not only that they do not owe anything to the plaintiffs, but that the damage done to them by reason of the use of the turpentine sold to them by the plaintiffs exceeds the amount of the plaintiffs' claim considerably, and that the defendants ask at your hands not merely a verdict in their favor, but a certificate that the plaintiffs owe them a certain sum of money, a statement of which counsel will send out with you.

If you find that there has been a warranty, and a breach of that warranty, and damages suffered by the defendants, to an extent exceeding in amount the claim of the plaintiffs, you may give

the defendants a certificate in their favor that the plaintiffs owe them that excess.

Defendants presented nine points which were all affirmed.

Verdict and judgment for plaintiffs for $1,305.49. Defendants appealed.

*Errors assigned* among others were (1, 2, 5) above instructions, quoting them.    (3) That the learned trial judge erred in not instructing the jury that even if they found as a fact that purity of said spirits of turpentine was not expressly warranted nor guaranteed by plaintiffs, that nevertheless the defendants were entitled in law to have delivered to them by plaintiffs, an article merchantable and salable under the denomination and description of the same as contained in bill of parcels, viz: "122 Barrels Spirits of Turpentine, Prime Regulars" and that the jury should therefore have been instructed by the learned trial judge that they must ascertain from the evidence whether the article as actually delivered by plaintiffs to defendants under the contract between them was merchantable and salable under the denomination and name "Spirits of Turpentine." (4.) That the learned judge erred in not instructing the jury that if they found as a fact that the plaintiffs knew or were informed by defendants at the time of the making of the contract, that said spirits of turpentine was to be used by defendants in the manufacture of varnish, and that if the jury further believed that said spirits of turpentine as actually delivered to defendants by plaintiffs under said contract, was in consequence of its adulteration with petroleum oil, or other foreign substances wholly unsuitable or totally unfit for the manufacturing of varnish, and that the defendants in ignorance of the true nature of said admixture innocently and in good faith attempted to use same in the making of said varnish and thereby lost the value of said spirits of turpentine as raw material, and that all the defective varnish manufactured therefrom was worthless, unsalable and thrown upon defendants' hands as a dead loss ; that then their verdict should be for the defendants, together with an award of a certificate for all damages believed by the jury to have been sustained by the defendants in the loss of large quantities of linseed oil, kauri or shellac gum, litharge, red lead, etc., innocently mixed and compounded by defendants

in their attempt to manufacture varnish from said adulterated spirits of turpentine.

*Julius C. Levi*, for appellants.—Appellants submit that the rule is that, the contract being executory, if upon examination and inspection of the article by the vendee the same is accepted and retained, all visible and patent defects therein are presumed to have been waived, but that if the defects are invisible and latent, and discoverable only in the use and actual consumption of the article by the vendee, then neither the acceptance nor waiver of said defects can be presumed merely from the retention of the article by the vendee, in the absence of proof of any knowledge upon the part of said vendee of the existence of said defects : Carleton v. Lombard Ayres & Co., 149 N. Y. 150; Studer v. Bleistein, 115 N. Y. 316; Day v. Pool, 63 Barb. (N. Y.) 506.

The evidence as to the prevalence of a notorious Philadelphia custom to sell an adulterated product as spirits of turpentine was wholly insufficient to vary the ordinary and common understanding and meaning of the words "spirits of turpentine : " Boyd v. Wilson, 83 Pa. 321; Yates v. Pym, 6 Taunt. 446 ; Woods v. Miller, 55 Iowa, 168 ; Fogel v. Brubaker, 122 Pa. 7 ; Dailey v. Green, 15 Pa. 118; Fraley v. Bispham, 10 Pa. 320; Port Carbon Iron Co. v. Groves, 68 Pa. 149 ; Ryan v. Ulmer, 108 Pa. 332 ; Wetherill v. Neilson, 20 Pa. 448 ; Iron Co. v. Richardson, 2 Pa. Superior Ct. 208.

*Henry R. Edmunds*, for appellees.—While it is the general rule that a manufacturer impliedly warrants his goods free from defects, the rule seems to be different, even in executory contracts, where the vendor is not the manufacturer, and is ignorant of the defects : Dounce v. Dow, 64 N. Y. 411 ; Jennings v. Gratz, 3 Rawle, 168 ; Kirk v. Nice, 2 Watts, 367 ; Lord v. Grow, 39 Pa. 88 ; Wetherill v. Neilson, 20 Pa. 448 ; Whitaker v. Eastwick, 75 Pa. 229; Fraley v. Bispham, 10 Pa. 320.

PER CURIAM, January 17, 1898:
We find no error in the rulings of the learned trial judge, or in his instructions to the jury, including portions of his charge referred to in each of the five specifications of error. A care-

ful consideration of the latter, in connection with the accompanying references to and citations from the testimony, etc., covering forty-five pages of appellants' paper-book, has satisfied us that there is nothing in either of them that requires special notice. Defendants' nine requests for instructions were all affirmed. There is no merit in the complaint that the learned trial judge did not go further and specially refer to the testimony relating to these requests.

The right of the plaintiffs to recover depended upon questions of fact which were fairly submitted to the jury, with full and adequate instructions, and by them determined in favor of the plaintiffs. There appears to be no valid reason for disturbing the judgment entered on the verdict thus rendered.

Judgment affirmed.